IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MILLIE CLEMENTS,

       Plaintiff,

vs.                            CASE NO. 1:16-cv-280-WTH-GRJ

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Acting

Commissioner of Social Security (the "Commissioner") denying Plaintiff's

application for Period of Disability and Disability Insurance Benefits

pursuant to Title II of the Social Security Act ("the Act"). (ECF No. 1.)

Plaintiff also filed for Supplemental Security Income pursuant to Title XVI of

the Act at a later date and escalated her claim to the hearing level. (*Id.*; R.

21.) The Commissioner has answered, ECF No. 9, and both parties have

filed briefs outlining their respective positions. (ECF Nos. 19, 20.) For the

reasons discussed below, it is recommended that the Commissioner's

decision be affirmed.

# I.  PROCEDURAL HISTORY

Plaintiff filed her Title II application on October 13, 2012, and her Title XVI application on September 2, 2014, alleging a disability onset date of December 1, 2010. (R. 68, 79, 146, 165.) Plaintiff originally alleged that she could no longer work due to manic depression, memory loss, severe anxiety, fainting spells, paranoia, extremity tremors, severe fatigue, Graves' Disease, and thyroid cancer. (R. 67, 169.) Her Title II application was denied initially and upon reconsideration. (R. 67–106.) On September 23, 2014, an administrative law judge ("ALJ") issued a decision unfavorable to Plaintiff. (R. 18–31.) The Appeals Council denied Plaintiff's request for review. (R. 1–7.) On August 16, 2016, Plaintiff filed the instant appeal. (ECF No. 1.)

# II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2000). Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing

*Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), *Richardson v.*
*Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971));
*accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial
evidence, the district court will affirm, even if the reviewer would have
reached a contrary result as finder of fact, and even if the reviewer finds
that the evidence preponderates against the Commissioner's decision.
*Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358
(11th Cir. 1991). The district court must view the evidence as a whole,
taking into account evidence favorable as well as unfavorable to the
decision. *Foote*, 67 F.3d at 1560. However, the district court will reverse
the Commissioner's decision on plenary review if the decision applies
incorrect law, or if the decision fails to provide the district court with
sufficient reasoning to determine that the Commissioner properly applied
the law. *Keeton v. Dep't Health & Human Servs.*, 21 F.3d 1064, 1066 (11th
Cir. 1994).

The law defines disability as the inability to do any substantial gainful
activity by reason of any medically determinable physical or mental
impairment that can be expected to result in death, or has lasted or can be

expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505 (2005).[1] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past

---

[1] All further references to 20 C.F.R. will be to the 2005 version, unless otherwise specified.

relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a

claimant's impairments (considering his residual functional capacity

("RFC"), age, education, and past work) prevent him from doing other work

that exists in the national economy, then he is disabled. 20 C.F.R. §

404.1520(f).

## III.  SUMMARY OF THE RECORD

Plaintiff's medical records cover the time period from 2010 to 2014

and are from the Starke Family Medical Center, Shands Hospital, UF

Center for Movement Disorders and Neurorestoration, Shands Medical

Plaza, UF Cardiology at Spring Hill, UF Shands Cancer Center, and UF

Women's Health. Because Plaintiff's arguments on appeal relate to her

mental health impairments,[2] the relevant portions of the medical record, the

ALJ's findings, and the Appeals Council's findings are summarized below.

## A.  Medical Evidence

From 2010 to 2013 Plaintiff visited the Starke Family Medical Center,

complaining at different times of thyroid problems, chest pain, tremors,

headaches, urinary issues, back pain, and hypertension, among other

---

[2] Specifically, Plaintiff argues that she "is disabled by her mental health issues." (ECF No. 19 at 22.)

things. Her diagnosis history included hypertension tachycardia, asthma, depression, and generalized anxiety disorder. Relevant to the discussion, during these visits her doctor often noted in the review of her symptoms anxiety and sometimes depression, but during some visits he noted neither anxiety nor depression. Her neurological exams typically revealed normal findings, including normal cognitive functioning. Her mood was euthymic; her affect was normal; and her thought processes and content were not impaired. There was also no decrease in concentrating ability and no memory lapses or loss. (R. 263–303, 547–55.)

Plaintiff also visited Shands Hospital in 2011, 2012, and 2013 for a thyroidectomy and other treatment. Neurological and psychiatric exams were also performed in the course of her treatment. During these mental examinations, Plaintiff was always alert, cooperative, and oriented. Her other neurological findings were also normal. In April 2011 Plaintiff's mood was noted as "no anxiety." During her 2012 visits, she stated she had depression and anxiety, but her examination revealed a normal mood. In January and February 2013 she had normal mental status exam findings, including normal mood and affect, behavior, judgment, and thought content. Her mood and affect were also normal in April 2013. (R. 313–80,

392–94, 458–530, 589–611.)

Plaintiff's tremor was treated by doctors at the UF Center for Movement Disorders and Neurorestoration in 2012. Her neurological examinations during these visits revealed normal findings, including normal language, attention, reflexes, and coordination. It was noted that her anxiety appears to worsen her tremor. But by December 2012 her depression was well controlled. (R. 440–52.)

In May 2012 Plaintiff visited the Eye Center at Shands Medical Plaza. During this visit, Plaintiff had no neurologic or psychiatric complaints. She did have those complaints during her 2013 visit, however. (R. 612–17.)

Plaintiff was treated by Dr. Ward at the UF Center for Movement Disorders and Neurorestoration beginning in August 2012 regarding her anxiety and depression. During her mental status examinations from 2012 to 2014, she made good eye contact and was cooperative. Her psychomotor activity was normal. Her thought process was coherent, well-organized, linear, and logical. She denied psychotic symptoms related to her thought content, and she did not have flight of ideas or looseness of association. Her judgment, insight, attention, and concentration were adequate, although during one visit she was distractable and inattentive.

Her memory was intact. (R. 399–426, 574–84, 625–43.)

Specifically with regard to her mood, Plaintiff reported improvements throughout her time with Dr. Ward. In August 2012 her mood was depressed, and her affect was blunted and mood-congruent, and in September it was depressed, irritable, and anxious. By October 2012, Plaintiff reported improvements with medication regarding her depression and anxiety. Her mood was "better," and her affect was appropriate in October 2012 and January 2013. Specifically in January Plaintiff said she noticed improvement in her mood and anxiety. Although in April 2013 her mood was "depressed," in August 2013 her mood was "not too bad" and her affect was appropriate and engaged. Then, when she visited in August 2014 after a year of no shows and cancellations, she stated that she stopped taking medications because she felt that she no longer needed them; however, she said her depression and anxiety worsened without the medications. Her mood was "depressed" and her affect was constricted, but her findings were otherwise the same. (R. 399–426, 574–84, 625–43.)

Plaintiff also visited Cardiology at Springhill in 2013. A review of her symptoms revealed no confusion, memory deficits, speech impairments, or other motor/sensory deficits. During her physical exams, she did not

appear in any distress, she had normal mood and affect, her speech was logical, goal oriented, and coherent, and she had no gross motor or sensory losses. (R. 560–62, 618–20.)

## B.  Opinion Evidence

### 1. State Agency Consultants

At the initial level and on reconsideration, state agency consultants assessed Plaintiff's physical RFC. They found that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently. She could stand, walk, and sit for six hours in an eight-hour workday. She had an unlimited ability to push and/or pull. Plaintiff could only frequently climb ramps and stairs and never climb ladders, ropes, or scaffolds. (R. 72–73, 86–88.)

They also assessed her mental RFC. Plaintiff did not have understanding or memory limitations, although she was moderately limited with regard to the ability to carry out detailed instructions and to maintain attention and concentration for extended periods. Plaintiff could have difficulty performing complex vocational assignments and could have lapses in focus, motivation, reliability, and productivity. However, she could execute short, simple instructions toward the goal of completing tasks consisting of recurrent, uniform steps with adequate concentration and

judgment. Plaintiff could also adapt to routine, infrequent changes in a

work setting but not to more frequent, complex changes, since she was

moderately limited with her ability to respond appropriately to changes at

work. (R. 73–74, 88–89.)

> In sum, they found

> Notwithstanding the limitations identified above, the totality of
> the evidence indicates that [Plaintiff] continues to have access
> to a number of mental abilities/skills that could be applied in a
> FT employment setting. [Plaintiff] can understand, retain, and
> carry out simple and more complex instructions. [Plaintiff] can
> consistently and usefully perform routine tasks on a sustained
> basis, with occasional lapses in concentration and focus, with
> minimal (normal) supervision, and can cooperate effectively
> with public and co-workers in completing simple tasks and
> transactions. [Plaintiff] can adjust to the mental demands of
> most new task settings. [Plaintiff] may need extra support to
> learn to adjust to the work environment and help with setting
> goals. Functional restrictions beyond levels assessed above
> are not attributable to [Plaintiff's] mental illness as reflected in
> the objective medical evidence in file.

(R. 75, 89.)

Ultimately, they found Plaintiff capable of performing sedentary work

at the initial level and light work on reconsideration. Therefore, she was not

disabled. (R. 76, 91–92.)

## 2. Dr. Ward[3]

On August 6, 2014, Dr. Ward completed a mental RFC assessment regarding Plaintiff's condition from July 2012 to August 2014. This assessment consisted of a checklist and did not include any explanation for Dr. Ward's findings.

Most notably, Dr. Ward noted that Plaintiff had marked restrictions[4] with regard to (1) her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (2) her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (3) her ability to respond appropriately to changes in the work setting. Dr. Ward concluded that Plaintiff was otherwise only mild to moderately restricted with regard to her mental RFC. (R. 671–73.)

_____

[3] This assessment was never submitted to the ALJ. Instead, it was submitted to the Appeals Council for consideration.

[4] According to the checklist, a marked restriction "represents a degree of limitation that is such as to interfere seriously with the claimant's ability to function independently, appropriately, effectively, and to do so on a sustained basis." (R. 671.)

## C.  Hearing Testimony

During the hearing held on September 2, 2014, Plaintiff was 51 years old. Plaintiff was 5' 8" and weighed 285 pounds. She testified that she last worked in June of 2010 doing data entry and was let go as a result of having to call in sick. She said that prior to that job, she worked for over 20 years doing medical billing. She was fired from that job for having to call in sick as well. (R. 40–43.)

Plaintiff testified that she spends her time keeping up with daily housework, including laundry, cooking, dishes, making the bed, and taking out the trash. Plaintiff clarified, however, that these chores take her longer than most people. Plaintiff also goes to the grocery store about every other day and is able to carry the packages. She reads her mail, listens to music, watches television, and spends time on the computer for online banking, email, and social media. She spends time with friends and relatives on occasion and tries to leave the house at least once a day, which includes driving. Her longest road trip in the past year was a six-hour drive. Plaintiff, however, said she can no longer camp, hike, or go to the beach. (R. 43–45, 49–50, 56.)

With regard to her impairments, Plaintiff testified that in December

2010, her alleged onset date, she was extremely weak, experiencing bad tremors, and fainting. She also could barely get out of bed. Prior to this time period, Plaintiff said she had to call in sick to her job due to fatigue, tremors, headaches, and nausea. (R. 51.)

Plaintiff said she began seeing Dr. Ward because her treating physician suggested that she see a psychiatrist. She said she saw him for anxiety and depression. She also said she was taking medication but that it did not agree with her, so she had to stop taking it. (R. 52–53.)

Plaintiff testified that she was seeing a different doctor for treatment of her tremors. Plaintiff stated that she constantly experiences tremors in her right hand and both legs. She said that these tremors prevent her from standing for more than 15 minutes and make her wobbly. She also said that they make her handwriting shaky but that she could pick up a button off the table. However, Plaintiff stated that she could not take the medication for tremors because it was preventing her from functioning and was not helping with her tremors. (R. 53–55.)

Plaintiff also testified that she constantly experiences fatigue, which causes her to need to sit down every 15 to 20 minutes. She also said that sometimes she has to sit down after standing for 10 minutes and that when

she does sit down, she has to rest for about 20 minutes before getting back up. Plaintiff added that when she sits for any period of time, she has pain in her shoulders, back, and legs, so she has to get up and move around. She said sometimes she also has to put her legs up to prevent swelling. (R. 55–57.)

With regard to her ability to lift and carry, Plaintiff said that she can only carry a pound on a regular basis. She said this is because she is weak and because her tremors would cause her to drop things. (R. 57.)

Plaintiff testified that back in December 2010, she could not do anything for herself but that now she can do some things. She said, however, that this difference was not as a result of her thyroid removal surgery. (R. 57.)

With regard to her mental functioning, Plaintiff testified that she has poor memory. She also said that she gets upset multiple times a day about things that should not upset her. Plaintiff said she also has to read something multiple times before she can understand what it is saying and that sometimes she has to refer back to something she read because she forgets what she read. Plaintiff added that she stopped seeing Dr. Ward as often because she did not want to get out of bed to go. (R. 58–59.)

The vocational expert ("VE") testified that Plaintiff's past work included a medical record coder and a data entry clerk. If Plaintiff could perform light work but needed to avoid ladders, unprotected heights, and heavy moving machinery as well as work in a low-stress work environment doing simple tasks, avoid contact with the public, only occasionally bend, crouch, kneel, or stoop, and avoid squatting, crawling, and pushing or pulling of arm controls, the VE stated that Plaintiff could perform the job of data entry clerk. (R. 61–62.)

The VE also said that an individual of Plaintiff's age, work, education, and experience with the same limitations stated above but without any skills could also perform the job of marker and routing clerk, which are light work, as well as the job of addresser and cutter and paster of press clippings, which are sedentary. These jobs entail either frequent or occasional fingering and fine fingering manipulation is required. The VE also said that there are typically two 15-minute breaks and one 30-minute break for lunch and that three or more absences per month would result in termination. If an individual required two additional 20-minute breaks, however, they would not be able to sustain competitive employment at any exertional level. (R. 62–66.)

## D.  The ALJ's Findings

The ALJ found that Plaintiff meets the insured status requirements of the Act through June 30, 2013, and that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of December 1, 2010. Further, the ALJ found that Plaintiff has the following severe impairments: thyroid disorder (Graves' disease), tachycardia, tremors, obesity, affective disorder, memory loss, and anxiety. However, none of these impairments, or a combination thereof, meets or medically equals the severity of one of the listed impairments. (R. 23–24.)

Based on a review of the entire record, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform sedentary or light work with limitations. These limitations include avoiding ladders, unprotected heights, and the operation of heavy moving machinery. Additionally, Plaintiff should only work in a low-stress environment that requires the performance of only simple work tasks with no production requirements or contact with the public. Lastly, Plaintiff could only occasionally bend, crouch, kneel, or stoop, and she must avoid squatting, crawling, and the push or pull of arm controls. (R. 25.)

In assessing Plaintiff's credibility, the ALJ found that although

Plaintiff's "medically determinable impairments could reasonable be expected to cause the alleged symptoms . . . [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible because they far exceed the level of severity revealed in [Plaintiff's] objective medical records and longitudinal treatment history." In support of this finding, the ALJ cited medical evidence, Plaintiff's testimony about her activities of daily living, Plaintiff's psychotropic treatment noncompliance, and state agency assessments. (R. 26–29.)

The ALJ then found that Plaintiff is capable of performing past relevant work as a data entry clerk. In the alternative, the ALJ also found that there are other jobs existing in the national economy that Plaintiff could also perform considering her age, education, work experience, and RFC. Ultimately, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Act, from December 1, 2010, through the date of the ALJ's decision, which was September 23, 2014. (R. 29–31.)

## E. Appeals Council's Findings

The following evidence was submitted to the Appeals Council: medical records from UF Shands Cancer Center dated September 2, 2011, through October 14, 2011; lab reports dated June 6, 2013, through June

11, 2013; medical records from UF Women's Health dated August 6, 2014;

and Mental Residual Functional Capacity Assessment completed by Dr.

Ward on August 6, 2014. The Appeals Council considered that evidence

along with Plaintiff's reasons for disagreeing with the ALJ's decision. The

Appeals Council concluded that the additional evidence "does not provide

a basis for changing the Administrative Law Judge's decision."

Accordingly, the Appeals Council denied Plaintiff's request for review. (R.

1–7.)

## IV.  DISCUSSION

Plaintiff raises the following three arguments on appeal: (1) the

Appeals Council should have remanded the case based on Dr. Ward's

mental RFC assessment, (2) the ALJ erred in his assessment of Plaintiff's

credibility; and (3) the ALJ erred by failing to account for Plaintiff's obesity

in his RFC determination. Each argument is discussed in turn below.

**A.  Because the Appeals Council adequately considered Dr. Ward's mental RFC assessment and because the ALJ's decision is supported by substantial evidence even when considering Dr. Ward's opinion, the Appeals Council did not err by failing to remand the case.**

Plaintiff first argues that the Appeals Council should have found Dr.

Ward's mental RFC assessment material evidence and remanded the case

with instructions for the ALJ to weigh the new evidence. Plaintiff contends

that the mental RFC assessment shows that Plaintiff has been significantly

limited mentally since July 25, 2012, and that if the ALJ had considered

this evidence, it would have made a difference on the outcome of the case.

(ECF No. 19 at 21–22.)

Generally, a disability claimant is allowed to present new evidence at

each stage of administrative review.  *See* 20 C.F.R. § 404.900(b); *Ingram*

*v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260–61 (11th Cir. 2007).

The Appeals Council must consider new, material, and chronologically

relevant evidence and must review the case if "the administrative law

judge's action, findings, or conclusion is contrary to the weight of the

evidence currently of record." *Id*. § 404.970(b).  Moreover, "[t]he new

evidence is material, and thus warrants a remand, if 'there is a reasonable

possibility that the new evidence would change the administrative

outcome.'" *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 745 (11th

Cir. 2011) (quoting *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir.1987)).

Sentence Four of 42 U.S.C. § 405(g) provides for remand when "the

Appeals Council did not adequately consider the additional evidence."

*Bowen v. Heckler*, 748 F.2d 629, 636 (11th Cir.1984). "[W]hen a claimant

properly presents new evidence to the Appeals Council, a reviewing court must consider whether the new evidence renders the denial of benefits erroneous." *see also Ingram*, 496 F.3d at 1262. In other words, the court must consider whether substantial evidence, including the new evidence, supports the Commissioner's final decision. *Id.* at 1266.

Here, the Appeals Council adequately considered the new evidence, including Dr. Ward's mental RFC assessment. The Appeals Council found that the reasons Plaintiff disagreed with the ALJ's decision and the additional evidence do "not provide a basis for changing the Administrative Law Judge's decision." This analysis included considering whether the decision is contrary to all the evidence in the record including any new and material evidence. Ultimately, the Appeals Council "found no reason under [the] rules to review the Administrative Law Judge's decision." Accordingly the Appeals Council denied Plaintiff's request for review. (R. 1–7.)

The evidence that Plaintiff says warrants remand is a mental RFC assessment completed by Plaintiff's treating psychiatrist, Dr. Ward. This assessment is merely a checklist that requires Dr. Ward to provide an opinion about Plaintiff's capacity to perform a variety of work-related tasks and functions. In relevant part, Dr. Ward found that Plaintiff had marked

limitations with regard to (1) her ability to perform activities within a

schedule, maintain regular attendance, and be punctual within customary

tolerances; (2) her ability to complete a normal workday and workweek

without interruptions from psychologically based symptoms and to perform

at a consistent pace without an unreasonable number and length of rest

periods; and (3) her ability to respond appropriately to changes in the work

setting. Notably, Dr. Ward provided no explanation for these marked

limitations or any of his other findings on his mental RFC assessment. (R.

671–73.)

In support of Plaintiff's argument that this evidence is material and

would have changed the ALJ's results, Plaintiff fails to cite to any medical

evidence in the record that supports Dr. Ward's assessment or that shows

that the ALJ's decision is not supported by substantial evidence in the

record. Instead, Plaintiff states that Dr. Ward's findings are supported by

Plaintiff's testimony that she has been terminated from her last two jobs

due to excessive absenteeism. Plaintiff then makes the conclusory

argument that substantial evidence shows that on Plaintiff's bad days she

would either be tardy or absent from work.  (ECF No. 19 at 21–23.) This

argument, however, fails to show how the new evidence is material or how,

when considering the new evidence, the ALJ's decision was not supported by substantial evidence.

First and most notably, the Appeals Council did not err in failing to remand the case because Plaintiff's testimony regarding the reason she was terminated from her last two jobs does not support Dr. Ward's opinion. Her last job ended in June 2010, and Dr. Ward's opinion relates to Plaintiff's condition starting in July 2012, two years after her last job. (R. 170, 671.)  Further, Plaintiff testified that she was terminated because she had to call in sick due to physical problems—such as fatigue, tremors, headaches, and nausea—not mental issues.[5] (R. 51.) Plaintiff's reasoning justifying why she was terminated from her last two jobs, therefore, does not support in any way Dr. Ward's RFC assessment addressing the effect of Plaintiff's mental impairments on her ability to work beginning in July 2012.  Accordingly, Plaintiff has failed to point to any support for Dr. Ward's mental RFC assessment and to explain how this opinion would have caused the ALJ to reach a different decision.

---

[5] Notably, Plaintiff's statement during the hearing regarding why she was terminated from her last job is contradicted by a state agency report that says Plaintiff stopped working in June 2010 because she was working a temporary job that ended. (R. 170.)

Additionally, the Appeals Council did not err in failing to remand the case because Dr. Ward's stated limitations are neither explained nor supported by his treatment records. Throughout Plaintiff's entire course of treatment from August 2012 to August 2014, the medical records demonstrate that Plaintiff made good eye contact; was cooperative; had a coherent, well-organized thought process (although circumstantial at times in August 2012); was oriented to person, place, and time; had an appropriate fund of knowledge; and adequate judgment, insight, attention, and concentration (although on one occasion in September 2012 she was distractable and inattentive, and in August 2014 her insight was superficial); and had grossly intact remote and recent memory. Plaintiff had no looseness of association or flight of ideas, psychotic symptoms, or suicidal or homicidal ideation. (R. 399–423, 625–42.)

Plaintiff's treatment records did, however, reveal changes in her mood and affect during this time. From August to September 2012, her mood was depressed, but her affect changed from blunted to depressed, tearful, irritable, and anxious. The diagnoses included major depressive disorder, recurrent, moderate and panic disorder and then changed to major depressive disorder, recurrent, severe with psychotic features, and

panic disorder. (R. 399–413.)

By October 2012, however, Plaintiff reported improvement with regard to her depression, mood, anxiety, affect, and irritability. Her condition remained unchanged by January 2013, other than reports of hallucinations of her dead cat. Her mood was "better" and her affect was appropriate. Plaintiff then stopped taking her medication, and her April 2013 records state her mood was depressed and her affect was appropriate, engaged, interactive, and depressed/tearful. Her diagnoses also changed to major depressive disorder (severe-recurrent) with psychotic features and generalized anxiety disorder. Yet after a change in medication, by August 2013, she reported improvements in her mood and anxiety, stating that her mood was "not too bad." (R. 419–23, 625–42.)

Then, after a year of not taking medication because she "didn't think she needed the medication," Plaintiff returned to Dr. Ward in August 2014. Although she reported that her symptoms had worsened, Dr. Ward noted that—even after a year without medication—Plaintiff still had normal findings during her mental status exam, except that she had a depressed mood and a constricted, depressed/tearful affect. As a result, Dr. Ward restarted Plaintiff's medications. (R. 630–33.)

Overall, Dr. Ward's treatment records reveal normal findings although changes in Plaintiff's mood and affect, which appeared to improve with medication. Thus, there is an absence of identifiable objective evidence supporting the basis for Dr. Ward's findings of marked limitation with regard to Plaintiff's ability to work within a schedule and be punctual, complete a workday without interruption from psychologically based symptoms, and respond appropriately to changes.

Further, the Appeals Council did not err in failing to remand the case because not only is Dr. Ward's opinion inconsistent with and unexplained by his own treatment records, it is also inconsistent with the normal findings regarding Plaintiff's mental functioning, mood, and affect from other doctors that treated Plaintiff. For example, when Plaintiff visited Dr. Modansky in January 2011 regarding her tremors, Plaintiff had a euthymic mood, normal affect, and unimpaired thought process and content. In February 2012 during an emergency room visit, Plaintiff was alert, oriented, and had appropriate thought content. In April and October 2012, Dr. Digman of Shands Hospital noted that Plaintiff had a normal mood. Then in early 2013, Plaintiff was noted as having a normal mood and affect, was alert and oriented, and had logical, goal-oriented, and coherent speech. In

April of 2013, Dr. Vaysber, who treated Plaintiff for hypothyroidism, noted that Plaintiff had a normal mood and affect.  (R. 278–80, 345–47, 391–93, 497–502, 560–62, 602–10.)

Lastly, the Appeals Council did not err in failing to remand the case because Dr. Ward's findings are inconsistent with the opinions of state agency psychological consultants, which are supported by a review of Plaintiff's records, including treatment records from Dr. Ward. Rather than finding that Plaintiff had marked limitations, Dr. Shapiro and Dr. Thibodeau found that Plaintiff was not significantly limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual as well as her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Additionally, these state agency consultants found that Plaintiff was only moderately limited in her ability to respond appropriately to changes in the work setting. (R. 69–75, 80–89.)

The findings of the state agency psychological consultants also included explanation and elaboration, unlike Dr. Ward's opinion. Notably, Dr. Shapiro found that although Plaintiff's symptoms could lead to difficulty

performing complex tasks and that Plaintiff could have lapses in focus and

productivity, she could still execute short, simple instructions under normal

supervision with adequate judgment and concentration. Plaintiff could also

"adapt to routine, infrequent changes in a work setting, but not to more

frequent, complex changes. [She] is able to avoid common hazards, set

realistic goals, and utilize public transportation." Lastly, Dr. Shapiro found

that despite her limitations, the medical evidence supports that Plaintiff has

the mental ability and skills to work. For example,

> [Plaintiff] can consistently and usefully perform routine tasks on
> a sustained basis, with occasional lapses in concentration and
> focus, with minimal (normal) supervision, and can cooperate
> effectively with public and co-workers in completing simple
> tasks and transactions. [She] can adjust to the mental
> demands of most new task settings. [She] may need extra
> support to learn to adjust to the work environment and help with
> setting goals. Functional restrictions beyond levels assessed
> above are not attributable to [Plaintiff's] mental illness as
> reflected in the objective medical evidence in file.

 (R. 74–75). Dr. Thibodeau affirmed these findings. (R. 80–89.)

Because Dr. Ward's mental RFC assessment is unsupported by his

own treatment notes and other medical evidence in the record, and

because the state agency psychological consultants reviewing the records,

including Dr. Ward's treatment records, reached a contradictory

conclusion, the Court finds that the Appeals Council did not err in determining that Dr. Ward's opinion did not provide a reason to change the ALJ's decision.

Ultimately, even considering Dr. Ward's opinion, the ALJ's determination that Plaintiff could perform light or sedentary work with certain limitations, including working in a low-stress environment and performing only simple tasks, among other things, is supported by substantial evidence. With regard to Plaintiff's mental status examinations in the record, including records from Dr. Ward, the ALJ noted that Plaintiff "repeatedly demonstrated grossly intact memory with adequate attention and concentration" as well as "had generally unremarkable findings with grossly intact memory, fair insight, adequate attention and concentration, and no significant psychiatric abnormalities despite her superficial judgment." The ALJ also noted that Plaintiff improved with conservative psychiatric treatment.

With regard to the opinion evidence, the ALJ also afforded great weight to the state agency mental assessments and their ultimate conclusion that Plaintiff could complete simple tasks at the light or sedentary exertion level. Overall, the ALJ's finding was supported by

medical records, hearing testimony, and conservative treatment. (R. 23–29.)

Notably, Plaintiff's conclusory statement that "[i]t is clear that on a good day, ALJ Droker's residual functional capacity is correct and applicable . . . [but] substantial evidence shows that on . . . bad days, [she] would at best be tardy and at worst, not present" is not supported by substantial evidence, or any evidence at all. Not only did Plaintiff fail to cite to any evidence in the record that supports Plaintiff's claim that she would be either tardy or absent, but also the record does not contain any evidence or opinion that Plaintiff would be tardy or absent from work as a result of her mental impairments.

Because the ALJ's decision is supported by substantial evidence even when considering Dr. Ward's mental RFC assessment, the Court concludes that the Appeals Council did not err in failing to remand the case after considering Dr. Ward's opinion evidence. *See Ingram*, 496 F.3d at 1266–69 (noting that district courts must determine whether Appeals Council correctly decided that ALJ's conclusion was not contrary to the weight of the evidence, including the new evidence submitted to the Appeals Council).

## B. The ALJ properly evaluated Plaintiff's credibility, and his determination is properly articulated and supported by substantial evidence.

Plaintiff next argues that the ALJ erred in his credibility assessment. Specifically, Plaintiff says the ALJ failed to make any specific finding relating his determination that Plaintiff lacked credibility to any specific notes or findings of Plaintiff's treating physicians. Rather than providing specific findings, Plaintiff says that the ALJ merely explained his finding that Plaintiff was not entirely credible by stating Plaintiff's "statements concerning the intensity, persistence [and] limiting effects of the[se] symptoms [are not entirely credible because they] far exceed the level[ of] severity revealed in the claimant's objective medical records and longitudinal treatment history." Plaintiff says that because the ALJ provided no specific citation to the record for this Court to examine, judicial review is prevented.[6] (ECF No. 19 at 23.)

If the ALJ decides to discredit the claimant's testimony as to her subjective symptoms, the ALJ must articulate explicit and adequate

---

[6] With regard to Plaintiff's credibility, Plaintiff also says that the ALJ did not challenge Plaintiff's credibility with regard to her previous job terminations. (ECF No. 19 at 23.) Plaintiff, however, has failed to provide any authority that suggests the ALJ is required to discuss the credibility of every statement Plaintiff makes during the hearing. Plaintiff has also failed to argue how failing to address the credibility of Plaintiff's statements regarding her job terminations affected the ALJ's decision in any way.

reasons for doing so or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). While the ALJ does not have to cite particular phrases or formulations, broad findings that a claimant was not credible and could work are, alone, insufficient for the Court to conclude that the ALJ considered the claimant's medical condition as a whole. *Id.* at 1562.

The ALJ's articulated reasons must also be supported by substantial evidence. *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). The Court will not disturb a properly articulated credibility finding that is supported by substantial evidence. *Foote*, 67 F.3d at 1562. The failure to articulate reasons for discrediting a claimant's subjective testimony, however, requires that the testimony be accepted as true and becomes grounds for remand where credibility is critical to the outcome of the case. *Id.*

In this case the ALJ determined that Plaintiff has medically determinable impairments that could reasonably be expected to produce her symptoms. After evaluating the intensity and persistence of Plaintiff's symptoms in determining how they limit her capacity for work, however, the ALJ concluded that Plaintiff's statements were not entirely credible. (R. 26.)

Substantial evidence supports the ALJ's credibility determination.

Plaintiff's argument that the ALJ erred in his credibility assessment is completely contradicted by the ALJ's decision, which includes citations to the medical evidence and a detailed explanation why the ALJ found that Plaintiff was not entirely credible. Most notably, immediately following the above-quoted language from the ALJ stating that Plaintiff is not entirely credible, the ALJ wrote that "the medical evidence does not support the alleged severity of the claimant's physical and mental impairments." (R. 26.) The ALJ then proceeds to cite extensively to specific medical evidence in the record throughout the rest of his decision explaining his reasons for finding Plaintiff only partially credible. This medical evidence included Plaintiff's treatment records since 2011 addressing her tremors, hypothyroidism, Graves' disease, tachycardia, and psychiatric symptoms. In addition to the medical evidence, the ALJ also supported his credibility determination with a discussion of Plaintiff's testimony regarding her daily activities as well as her psychotropic treatment noncompliance. (R. 26–29.)

Because the ALJ's credibility assessment is properly articulated and supported by substantial evidence, the Court concludes that the ALJ did not err in his credibility assessment.

## C. The ALJ did not err in addressing Plaintiff's obesity and its effect on her ability to work.

Lastly, Plaintiff argues that the ALJ's decision is void of any findings regarding Plaintiff's obesity and how it impacts her ability to perform past relevant work or other work. Plaintiff says that although substantial evidence supports a finding of disability based on Plaintiff's mental health issues and the resulting tardiness and absenteeism, the ALJ was still required to include Plaintiff's obesity in his analysis of her physical RFC. (ECF No. 19 at 23–24.)

The SSR guides the evaluation of obesity in disability claims and was published following the deletion of Listing 9.09, Obesity, from the Listing of Impairments.  *See* 67 Fed. Reg. 57859, 57860-61 (Sept. 12, 2002).  The SSR recognizes that obesity is a risk factor that increases the chance of developing impairments in other body systems, including the cardiovascular, respiratory, and musculoskeletal body systems.  *Id*.  The SSR provides that the ALJ should consider the effect of obesity at each step of the sequential evaluation:

> [T]he combined effects of obesity with other impairments can
> be greater than the effects of each of the impairments
> considered separately.... [A]djudicators [should] consider the
> effects of obesity not only under the listings but also when

assessing a claim at other steps of the sequential evaluation
process, including when assessing an individual's residual
functional capacity.

*Id*. at 57861–62.

In this case, the ALJ found that obesity was one of Plaintiff's severe
impairments despite the fact that Plaintiff never alleged disability due to
obesity either in her applications or during the hearing. Then, contrary to
Plaintiff's argument, the ALJ found that Plaintiff's "obesity has persisted
since her alleged onset date, but it has not prevented her from performing
basic activities of daily living, engaging in social functioning, or otherwise
precluded her from completing basic physical and cognitive functions at the
light or sedentary exertional levels." In support of this statement, the ALJ
cited to office treatment records from Starke Family Medical Center and
the UF Center for Movement Disorders and Neurorestoration. The ALJ also
referenced Plaintiff's obesity when discussing the weight he accorded to
the state agency consultants' opinions, stating that one of the reasons he
gave the opinions great weight is because they "account for the vocational
impact of the claimant's obesity as required under Social Security Ruling
02-1p." (R. 23, 28–29.) Accordingly, the ALJ properly considered

Plaintiff's obesity when making his RFC determination.

Notably, Plaintiff has not pointed to any record evidence suggesting particular additional limitations from obesity that the ALJ failed to consider. *See Vickers v Astrue*, No. 3:08cv78/MCR/EMT, 2009 WL 722273, at *14 (N.D. Fla. Mar. 18, 2009) (remand for failure to mention obesity was not required where the claimant did not show how his obesity impacted his ability to work); *Sutton v. Colvin*, No. 1:13-cv-00163-MP-GRJ, 2014 WL 4627428 (N.D. Fla. Sept. 15, 2014) (remand not required for failure to evaluate effect of morbid obesity on back pain at Step Four where ALJ discussed medical records referencing obesity and no medical source attributed functional limitations due to obesity).

Not only did the ALJ properly address Plaintiff's obesity, but in the absence of any evidence in the record that Plaintiff's obesity causes additional functional limitations beyond those assessed in the RFC, there is no basis for a remand.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the

decision of the Commissioner should be **AFFIRMED**.

     **IN CHAMBERS** on the 24th day of August 2017.


*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

     **Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.